# AFFIDAVIT OF HSI SPECIAL EVAN PICARIELLO

### *INTRODUCTION AND AGENT BACKGROUND*

1. I, Evan Picariello, am a Special Agent with United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI") and have been so employed since July 2014. I am currently assigned to the Office of the Special Agent in Charge (SAC), Boston, Massachusetts. I am authorized to investigate crimes involving violations of Title 8, Title 18, and Title 19 of the United States Code ("USC"). I am a graduate of the Federal Law Enforcement Training Center ("FLETC") in Glynco, Georgia, where I received training to become a Special Agent; specifically, I received certifications from the Criminal Investigator Training Program in July 2015 and from the HSI Special Agent Training Program in October 2015. I have also received training relating to the trafficking of persons, including sex trafficking, and other offenses.

2. I have participated in investigations of human trafficking, human smuggling, drug trafficking, financial crimes, and related offenses. Many of these investigations have had national or international connections. Additionally, these investigations required me to work closely and share information and intelligence with members of other federal, state, and local law enforcement agencies. I have debriefed, and continue to debrief, defendants, informants, and witnesses who have personal knowledge about human trafficking, including sex trafficking, and other crimes occurring in Massachusetts, nationally, and abroad.

3. From my training and experience, I know that individuals are trafficked for several purposes. Some of these purposes are involuntary servitude, peonage, debt bondage and slavery. Human trafficking is often accomplished through the use of force, fraud, and/or and coercion. I am familiar with the federal and state laws which make it a violation to engage in human

trafficking, such as 18 U.S.C. §§ 1581 through 1595 (Peonage, Slavery and Trafficking in Persons), 18 U.S.C. §§ 2421 through 2428 (Transportation for Illegal Sexual Activity and Related Crimes) and Massachusetts General Laws Chapter 272 related to the prostitution industry.

4. I am currently investigating RONALD HALL a/k/a "Riz" ("HALL") for violations of 18 U.S.C. §§ 1591 (Sex Trafficking by Force, Fraud, or Coercion) and 2421 (Transportation of an Individual for Prostitution) (collectively, "the Target Offenses").

5. The facts in this affidavit come from my personal involvement and review of records in this investigation, interviews with witnesses, my training and experience, and information obtained from other agents, law enforcement officers, witnesses and other sources of information gathered through my investigation. This affidavit includes only those facts I believe are necessary to establish probable cause and does not include all of the facts uncovered during the investigation.

## PROBABLE CAUSE THAT A FEDERAL CRIME WAS COMMITTED

Massachusetts State Police Incident

6. Based on my review of a law enforcement report and discussions with other law enforcement agencies, I have learned that on January 22, 2020, a female (hereinafter "Female One") was arrested and interviewed by Massachusetts State Police. Female One was arrested for driving a stolen vehicle. This vehicle was registered to HALL. Subsequent to her arrest, Female One told law enforcement officers that she was being pimped by HALL and he had physically assaulted and raped her. Female One stated that she had travelled with a friend (hereinafter "Female Two") to a hotel in Warwick, RI, where HALL raped Female One. HALL then took Female One and Female Two to the Verve Hilton Hotel in Natick, MA. Female One stated that HALL kept her at the hotel for two days and provided her with cocaine laced with fentanyl. Female

2

One stated that HALL beat her with an ice-scraper and smashed her head off the dashboard of his car. Female One then said that she took HALL's vehicle as a means to get away from him. On July 14, 2020, HALL was indicted by a Grand Jury on Massachusetts state charges stemming from this incident.

7. I have been investigating Ronald HALL a/k/a "Riz" ("HALL") for sex trafficking violations since approximately February 2020. This investigation started as a result of information received from the Massachusetts State Police after the above incident, as well as information received from other law enforcements agencies that indicate HALL has been involved in sex trafficking, conspired with others who engage in sex trafficking, and that he persuaded, induced, enticed, and coerced individuals to travel in interstate commerce to engage in prostitution.

VICTIM A's Account

8. During the course of this investigation, I have identified and interviewed multiple individuals who were prostituted and trafficked by HALL, including Victim A. Victim A's identity is known to me and other law enforcement officers, as well as the government. Victim A has admitted to prior drug use and drug addiction. Because Victim A's account has been corroborated and consistent with other evidence in this investigation, I believe that Victim A's information is accurate and reliable.

9. Victim A was initially identified by law enforcement as a victim in another human trafficking investigation involving a pimp named Barry DAVIS [1]. Victim A told law enforcement that in approximately 2013 or 2014, she met HALL when she was purchasing drugs from him.

---

[1] Barry DAVIS pled guilty in the Federal District Court of Massachusetts on March 22, 2017 to three counts of 18 USC 1591 (Sex Trafficking via force, fraud or coercion) and three counts of 18 USC 2421(Transportation of an Individual with intent to engage in prostitution).

Victim A stated that she was with another female (hereinafter "Female Three") at the time and that HALL tried to recruit them to work for him as prostitutes. HALL knew that Victim A was addicted to drugs. HALL promised Victim A and Female Three that they would no longer have to worry about buying their own drugs because HALL would provide them with the drugs they needed [2]. Victim A stated she reached out to HALL after running away from DAVIS, who had physically assaulted her.

10. Victim A identified a photograph of HALL taken from the Rhode Island Department of Corrections. Victim A stated she knew HALL as "Riz".

11. When Victim A began working for HALL, she moved from Massachusetts to Woonsocket, Rhode Island to live with HALL. HALL drove Victim A from Massachusetts to Rhode Island to meet with clients and perform sexual acts. HALL had several other females living with him when Victim A moved in. Each of these girls worked for HALL as prostitutes. When Victim A first began working for HALL, it was in a massage parlor in Rhode Island where the women would perform sexual acts on clients. Victim A eventually began working for HALL as a prostitute at other locations including hotels, casinos, and other locations throughout the northeast.

12. Victim A used hotels.com to find hotels for prostituting. Victim A used her own account to book the rooms, but Hall gave her money to pay for the rooms. Victim A usually paid with a Vanilla Visa card provided by HALL. Sometimes these Vanilla cards would be pre-loaded

---

[2] Pimp-encouraged and pimp-facilitated drug use has been seen as a "[substitution] for violence as the means of coercing compliance from workers." (May et al. 2000, 8). Researchers have also found that some pimps do actively exploit and encourage sex workers' drug addictions in order to create dependency upon the pimp and increase the pimp's control over actions. (May et al. 2000; Raymond et al. 2001). Meredith Dank, PhD, Bilal Khan, PhD, et. al., Estimating the Size and Structure of the Underground Commercial Sex Economy in Eight Major U.S. Cities, Urban Institute Research Report, March 2014, available at http://www.urban.org/publications/413047.html at 172.

with money already on them, and other times HALL would provide cash to the girls to fund the cards. Victim A was transported to the hotels and casinos by various people, including HALL and other girls who worked for him. Victim A informed law enforcement that HALL brought girls, including Victim A, to New Hampshire, Massachusetts, Connecticut, New York and Rhode Island to engage in prostitution. Victim A also stated that HALL transported other females to Las Vegas, Nevada to perform sexual acts.

13. Victim A stated that HALL physically assaulted her and other females regularly. On at least one occasion, HALL beat Victim A so badly that she requested to go to the hospital, but HALL refused to let her go. Victim A stated that HALL was the most violent pimp she had ever worked for.

14. Victim A gave law enforcement a photograph from her Facebook account that showed injuries to her face after HALL had physically assaulted her in approximately 2014.

15. HALL provided Victim A with drugs including heroin, crack, and Xanax. HALL would give the girls who worked for him drugs throughout the day. Victim A accompanied HALL, on various occasions, to pick up drugs. Victim A went with HALL to Dorchester, MA and Providence, RI to get the drugs.

16. Victim A stated that all money made from prostitution went to HALL. Victim A charged 'clients' $200 for one hour or $120 for a half hour. Victim A estimated she made about $1,000 to $2,000 per day. Victim A would sometimes try to hide money from HALL, but HALL would often search the girls for extra money or drugs. On one occasion, Hall beat Victim A when he found that Victim A had drugs that HALL did not supply to her.

17. Victim A stated that some of the girls working for HALL had tattoos that read "RIZ" with a crown above the word. Victim A recalled seeing at least two of the girls with this tattoo. The tattoo was a "branding" of sorts to symbolize the girls belonged to HALL.

### VICTIM B's Account

18. In the course of this investigation, I have also identified and interviewed a second female, hereinafter Victim B. Victim B's identity is known to me and other law enforcement officers, as well as the government. Victim B has admitted to prior drug addiction. As of the date of our interview, Victim B had reported being clean for approximately three years. Because Victim B's account has been corroborated and consistent with other evidence in this investigation, I believe that Victim B's information is accurate and reliable.

19. In June 2020, I interviewed Victim B as a part of this investigation. Victim B stated she began working for HALL in approximately 2014. Victim B was addicted to heroin and crack cocaine during the time that she worked for HALL.

20. Victim B first met HALL when she relapsed on drug use. Victim B had met another male at a substance abuse meeting who introduced her to the prostitution lifestyle. Victim B had posted a sex advertisement on Backpage.com and HALL responded to this advertisement by posing as a customer. HALL recruited Victim B with promises of a better life and drugs.

21. Victim B stated she was prostituted by HALL in multiple locations including, but not limited to, Connecticut, Rhode Island, Atlantic City, New Jersey and Las Vegas, NV. Victim B stated that the females working for HALL had to earn at least $1,000 per night. If a female did not earn enough money, HALL would withhold drugs as a form of punishment, causing them to become sick from withdrawals. Victim B stated that all of the money earned from prostitution went to HALL. HALL would regularly search the women for extra money and/or drugs that were

not supplied by him. Additionally, the women needed permission from HALL to sleep or to leave the hotel room(s) they were working in. Victim B stated that they were constantly monitored by HALL. She said that the women had to text HALL when they took clients, and after they finished 'dates' to inform him of the amount of money collected. HALL would occasionally get an additional hotel room next to the room where the women took dates, so that HALL could monitor them.

22. Victim B was able to identify and recall at least five additional women who worked for HALL at the same time as her. Victim B stated that all of these victims were physically assaulted by HALL. Victim B described one of these victims (hereinafter, "Female Four") as being used as a "punching bag" for HALL.

23. Based on my review of a law enforcement report, I have learned that on September 15, 2015, Victim B was encountered during a vehicle stop conducted by Rhode Island State Police. Victim B's purse, along with the purse of her passenger (hereinafter, "Female Five"), contained needles and steel wool. Female Five's purse also contained a burnt spoon and a needle filled with a dark brown liquid identified as heroin. Additionally, the vehicle driven by Victim B was registered to HALL.

24. Based on my review of a law enforcement report, I have learned that on May 19, 2016, Victim B was interviewed by Cranston Police after a motor vehicle stop in Rhode Island. During that interview, Victim B stated she had been a prostitute for approximately three years. Victim B moved in with HALL after she was released from rehab. HALL would provide Victim B with drugs in return for Victim B working as a prostitute. Victim B stated all of the money earned from prostitution went to HALL.

25. Additionally, based on my review of the same report, I have learned that another female (hereinafter "Female Six") was interviewed by Cranston, RI Police after the motor vehicle stop in Rhode Island. During that interview, Female Six stated she had been a prostitute for approximately one year. Female Six stated that HALL had asked her if she wanted the "nice things in life" such as travel, money, and trips to Las Vegas. Female Six stated that HALL had provided drugs to females who worked for him. Female Six had travelled with HALL to hotels in Massachusetts, Rhode Island, and Nevada. Female Six stated that all the money she earned from prostitution went to HALL.

## CONCLUSION

26. Based on the above, there is probable cause to believe that from at least in or about 2014 and through in or about January 2020, HALL was engaged in sex trafficking by force fraud or coercion, in violation of 18 U.S.C. §§ 1591, and the transportation of individuals in interstate commerce with the intent that such individuals engage in prostitution, in violation of 18 U.S.C. § 2421.

_____
EVAN PICARIELLO
SPECIAL AGENT
HOMELAND SECURITY INVESTIGATIONS

Date: August 12, 2020

Notice is hereby provided that, pursuant to Federal Rule of Criminal Procedure 4.1, the affiant was sworn by telephone on the date and time indicated above and on the criminal complaint issued by the Court.

_____
HONORABLE JUDITH G. DEIN
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS